**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**

IN RE:                                                    BANKRUPTCY PROCEEDING

KEY THERAPEUTICS, LLC                          CASE NUMBER: 26-00106 JAW

---

**RESPONSE TO CITIZENS BANK'S MOTION FOR RELIEF FROM STAY AND
ABANDONMENT REGARDING ACCOUNTS RECEIVABLE
(Docket No. 36)**

---

COMES NOW, North Point Rx, LLC ("North Point"), by and through its counsel, and files this Response to Citizens Bank's Motion for Relief from Stay and Abandonment Regarding Accounts Receivable (Docket No. 36), and in support thereof would show unto the Court as follows:

1.

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §1334, 28 U.S.C. §157, and related code sections and rules.

2.

On January 30, 2026, Robert Wayne Sims ("Sims") filed his petition under Chapter 7 of the United States Bankruptcy Code before the United States Bankruptcy Court for the Southern District of Mississippi (Case No. 26-00138 JAW). Stephen Smith was appointed the Chapter 7 Trustee.

3.

On January 15, 2026, Key Therapeutics, LLC ("Key") filed its petition under Chapter 7 of the United States Bankruptcy Code before the United States Bankruptcy Court for the Southern District of Mississippi (Case No. 26-00106 JAW).  Stephen Smith was appointed the Chapter 7 Trustee.

4.

Key is a Mississippi limited liability company. Sims owns 100% of the membership interest in Key. Sims serves as the managing member of Key. Thus, Sims controlled Key and managed all operations of Key.

5.

On or about July 7, 2022, North Point purchased 100% of the intellectual property rights and existing inventory to two (2) pharmaceutical assets (the "Pharmaceutical Products") from a Food and Drug Administration (the "FDA") licensed pharmaceutical manufacturer.

6.

On or about July 8, 2022, North Point and Key entered into a Commercialization Agreement (the "Agreement"), under which North Point and Key would work to commercialize and jointly market and promote the Pharmaceutical Products owned by North Point. Through the Commercialization Agreement, North Point granted Key a license to distribute and sell the Products. At no time did North Point deliver any ownership interest or right in the Pharmaceutical Products to Key.

7.

On January 19, 2023, Key advised North Point that it was terminating the Agreement. As a result of Key's non-compliance with contractual provisions governing the winddown of the parties' business relationship, North Point initiated an arbitration against Key. Specifically, North Point initiated the arbitration against Key because, among other reasons, Key refused to sign the appropriate paperwork from the FDA allowing North Point to contract with a new business partner after Key terminated the Agreement. Essentially, Key was holding the Pharmaceutical Products hostage.

8.

In addition, Key had removed all revenue generated from the sale of the Pharmaceutical Products from the bank account ("Bank Account") that parties jointly established per the terms of the Agreement That revenue was supposed to be used to pay legitimate costs and then distributed between the parties per the terms of the Agreement. Instead, Key removed all of the revenue and deposited that revenue in a different bank account owned solely by Key. Funds could only be removed from the Bank Account with North Point's approval. North Point never approved the removal of the funds from the Bank Account.

9.

In addition, prior to North Point filing for Arbitration, North Point had full visibility into the Bank Account so that it could monitor deposits of revenue and withdrawals to pay approved expenses. However, during Arbitration, Key removed North Point's online visibility and access to the Bank Account As of this date, Key has not restored North Point's access to the Bank Account nor has Key complied with the order of the Arbitrator of returning the revenue generated from the sale of the Pharmaceutical Products back to the Bank Account. All transactions related to income and the payment of expenses associated with the Pharmaceutical Products were to be done out of this Bank Account.

10.

Schedule A to the Commercialization Agreement set forth the profit sharing formula for parties and also set forth rights and obligations the parties held and owed to one another. On October 2, 2023, the Arbitrator entered a Final Order. However, after the Arbitrator entered a Final Order, North Point asked the Arbitrator to modify the Final Order because of additional harmful conduct

by Key that caused additional damages to North Point as well as exacerbate the on-going harm to North Point for Key's failure to comply.

11.

After the Arbitrator issued his Final Order, North Point provided evidence to the Arbitrator that Key improperly blocked North Point's access to a bank account the parties established ("Bank Account") pursuant to the Agreement along with evidence that Key had drained the Bank Account of almost all of the revenue generated from the sale of the pharmaceutical products owned by North Point. Thus, because of Key's harmful conduct after the Arbitrator issued his Final Order, and based on Key's failure to comply with the Final Order, North Point asked the Arbitrator to modify the Final Order.

12.

The Arbitrator agreed, and following the submission of evidence and briefing, the Arbitrator entered the Modified Final Order because of Key's failure to comply with the initial Final Order. On October 18, 2023, a Modified Final Order was entered in the arbitration proceeding compelling Key to, among other things:

a. deposit in the bank account **("Bank Account")** opened and maintained in accordance with Section 3 of Schedule A to the Agreement **("Section 3")** the sum of $500,000 (five hundred thousand dollars) within five business days following the date of notification of this Modified Final Order;

b. comply with the requirements in Section 3 that all "Gross Sales" as defined in the Agreement are deposited in the Bank Account;

c. not make any disbursements from, or otherwise encumber, the Bank Account, except (i) to pay "Commercialization Expenses" as defined in Section 3, or (ii) as otherwise approved in writing by North Point, which approval shall not be unreasonably withheld; and,

d. restore North Point's access to view transactions occurring with the Bank Account and is **Ordered** to restore North Point's visibility to the Bank Account.

Based on the sales associated with the Pharmaceutical Products, prior access to the Bank Account, and other documents provided by Key, there was $2,339,602.88 in gross sales of the Pharmaceutical Products. Based on this information and the order from the arbitrator, Key was required to deposit $2,339,602.88 into the Bank Account.

13.

On September 19, 2024, North Point filed its Petition to Confirm Arbitration Award in the United States District Court for the Southern District of Mississippi, Northern Division (Case No. 3:25-cv-00020-KHJ-MTP). The Honorable Kristi H. Johnson served as the District Court Judge and the Honorable Michael T. Parker served as the Magistrate. On May 19, 2025, a Final Judgment was entered by Judge Kristi H. Johnson in the District Court case. The Final Judgment confirmed the arbitral award against Key and compelled Key to comply with the Arbitrator's Modified Final Order.

14.

At all times Key was under the instruction, supervision and direction of Sims. The specific actions of Sims has caused significant damages to North Point in the amount of at least $5,676,370.95. An itemization is attached as Exhibit "1".

15.

During the course of these matters, on November 12, 2025, Citizens Bank was issued a written notice confirming the ownership and claims of North Point. A copy of the notice is attached as Exhibit "2".

16.

A determination must be made as to the source of the accounts receivable. To the extent the accounts receivable are or have been generated from the sale of North Point's property, the funds collected would be the property of North Point and not Key or Citizens Bank.

17.

North Point objects to the abandonment of accounts receivable and the termination of the automatic stay. Citizens Bank fails to establish ownership of the Debtor with an accounting and tracking of the accounts.

WHEREFORE, North Point Rx, LLC requests the Court to find that its Response is well taken and should be sustained.

Respectfully submitted,

NORTH POINT RX, LLC


BY:   s / Derek A. Henderson
        DEREK A. HENDERSON
        ATTORNEY FOR NORTH POINT RX, LLC


**Derek A. Henderson, MSB #2260**
**Anna Claire Henderson, MSB #106230**
**1765-A Lelia Drive, Suite 103**
**Jackson, MS 39216**
**(601) 948-3167**
**derek@derekhendersonlaw.com**
**annaclaire@derekhendersonlaw.com**

**CERTIFICATE OF SERVICE**

I, DEREK A. HENDERSON, do hereby certify that I have this date served, via United States Mail and/or ECF Notification Service, which provides electronic notice to all parties of record, a true and correct copy of the above and foregoing Response to Citizens Bank's Motion for Relief from Stay and Abandonment Regarding Accounts Receivable.

This the 18th day of March, 2026.

s / Derek A. Henderson
DEREK A. HENDERSON