# EXHIBIT A

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**

In re:    **S-7 Properties, LLC**        **Case No.    26-01029-JAW**

        **Debtor.**            **Chapter:    7**

---

**MOTION TO SUBSTANTIVELY CONSOLIDATE AFFILIATE CHAPTER 7 BANKRUPTCY CASES OF S-7 PROPERTIES, LLC, KEY THERAPEUTICS, LLC, AND ROBERT W. SIMS, OR, ALTERNATIVELY, TO DISMISS S-7 PROPERTIES, LLC BANKRUPTCY PETITION**

---

The Citizens Bank of Philadelphia ("Citizens Bank" or "Citizens") files this motion requesting entry of an Order by the Court substantively consolidating the Chapter 7 bankruptcy cases and estates of Debtor S-7 Properties, LLC ("S-7"), Debtor Key Therapeutics, LLC ("Key"), and Debtor Robert W. Sims ("Sims") (together, the "Bankruptcy Cases"). Alternatively, Citizens requests dismissal of the bankruptcy case of S-7 as having been improperly filed in bad faith. In support, Citizens Bank submits the following:

## I. Introduction

1.    The facts here are plain, have been set into the record and evidence numerous times in this and the affiliated Bankruptcy Cases already, and—importantly—are largely undisputed. S-7, a properly formed Alabama limited liability company, is a real property holding entity, established for the purpose of holding title to, providing insurance for, and management of a single asset: a condominium located in Gulf Shores, Alabama, at 365 E. Beach Blvd., Unit No. 804 (the "Condo"), having a current appraised market value of $770,000, as further discussed below. S-7 Properites is owned and managed by a single member, Robert

PD.61794545.2

W. Sims. Mr. Sims is also the sole member and manager of Key, an operating entity, established for the purpose of purchasing, selling, and distributing certain pharmaceutical licenses and inventory, all of which were purchased by Key with use of the proceeds of a commercial loan borrowed by Key, secured by a security interest on Key's pharmaceutical assets, accounts, and A/R, guaranteed by Mr. Sims, and secured by a lien on the Condo and a security interest on all Condo rents, leases, and sale proceeds. On the basis of this agreed upon structure, after completing an appraisal reoprt concerning the Condo, title search reports, preparation of the full structured loan package and execution and return by Key, Sims, and S-7, Citizens duly recorded the liens and the UCC-1s's and disbursed the loan proceeds consistent with the requests made to Citizens and approved and requested in writing by Key as well as by Sims, and S-7.

2.      Originally entered into by the parties and executed with the liens and security interests properly perfected in 2024, the Loan Package was amended and extended on request of Key, Sims, and S-7 in 2025, when the structured loan package was again entered into, executed by all parties, and properly recorded in the records. The loan thereafter went into default, and Citizens made demand for payment and satisfaction in accordance with the terms and conditions of the loan package. The default was not cured.

3.      As the result of certain proceedings by and between Key and another party (North Point) in another forum, on information and belief, Key filed a Chapter

7 bankruptcy petition in this Court on January 15, 2026, followed soon after by a filing by Mr. Sims on January 21, 2026.

4.      Citizens had commenced preparations to take possession of the Condo and prepare it for advertisement, marketing, and sale, and had placed orders in preparation for an updated title search report and an updated appraisal report, among other measures and preparations, at the time of the Bankruptcy Case filings by Key and Sims. Citizens notified the Trustee of all collateral subject to liens and interests held by Citizens as security for repayment of the affiliate loan package indebtedness owed, which at that time was approximately $1.9 million and continuing to grow with interest accrual, expenses and costs, and the impending costs to be associated with taking possession of all collateral interests and preparing them for sales or otherwise executing upon the state-law rights held by Citizens with respect to all collateral subject to its liens and security interests. Citizens' preparations to proceed with respect to the Condo were also disclosed, and while the Trustee requested during a video conference meeting with Citizens' counsel in January of 2026 that Citizens prepare a motion for comfort order and file it in the Sims case before continuing with any proceedings on the S-7 Condo, the Trustee advised he would enter into an agreed order on the motion upon Citizens providing it to him and his counsel.

5.      The Trustee thereafter went non-responsive for months, and requested copious documents and records, which Citizens cooperated fully with and provided in good faith, and after continued refusals to commit clearly to either entering an agreed

order as previously agreed or stating that the Trustee had determined he would not in fact support that relief, Citizens proceeded with filing its motion prepared on the direction and request of the Trustee for entry of an order confirming that Citizens may proceed with exercise of its rights in and with respect to the Condo despite the pendency of Sims's individual case, because the Condo is owned by S-7.

6.      The Trustee opposed the relief sought by Citizens in the Sims case, and just hours before the hearing on Citizens' motion prepared and filed at the behest of the Trustee, which was set for <u>Apr. 14 at 3:00pm</u>, the Trustee filed an application to employ Craig M. Geno (Sims Dkt. # 51, filed Apr. 14 at 8:25am) for the express purpose of putting S-7 into bankruptcy, an order was entered virtually immediately thereafter granting the application without notice or opportunity to respond by Citizens (Sims Dkt. # 52, Apr. 14 at 9:21am). And, approximately one hour before the hearing before the Court on Citiznes' comfort order motion directed be filed by the Trustee before it could proceed with exercise of its rights against its collateral owned by S-7, Mr. Geno caused a Chapter 7 bankruptcy petition to be filed for S-7 (Dkt. # 1, S-7 Bank. Pet., filed on Apr. 14 at 1:42pm), and the Trustee was appointed in the S-7 case not long thereafter (Dkt. # 7, Apr. 14 at 3:15pm).

7.      Despite the Condo and the rental proceeds from the Condo not being a part of the bankruptcy estate of Mr. Sims individually pursuant to 11 U.S.C. § 541, the Court denied Citizens' motion for entry of a comfort order, directing Citizens to come back after filing again if it wanted stay relief after filing in the brand new Trustee commenced Chapter 7 bankruptcy case for S-7 – a single-asset, zero creditor

PD.61794545.2

entity, which had pledged a first-priority, properly perfected mortgage lien on its only asset to Citizens as a part of the affiliate package commercial loan extended by Citizens to Key for benefit of and on request of Key, Sims, and S-7.

8. The Chapter 7 Trustee for Sims and Key has now unilaterally put S-7 into bankruptcy—an entity with no ongoing business operations and no debts other than the mortgage granted to Citizens Bank. The reason is clear and has been stated on the record many times now: the Chapter 7 Trustee intends to avoid the mortgage to Citizens Bank, sell the Condo, and transfer funds from S-7's estate to Sims' individual estate in order to pay Sims's creditors. Because S-7 has none, other than the administrative obligations the Trustee has created by commencing the S-7 bankruptcy case for the purpose of challenging Citizens' lien rights.

9. For all these reasons, and also for the reasons stated in the Court's Order consodlidating Citizens' Motion for Relief from Stay with the Chapter 7 Trustee's adversary proceeding concerning the Condo (Dkt. # 47 at pp. 9 -10), the Court should substantively consolidate these three bankruptcy cases.

## II. Relevant Background

10. As the Court is already aware, this case is one of three closely related bankruptcy cases pending before this Court with overlapping disputes:

> (a) In re S-7 Properties, LLC, Case No. 26-01029-JAW (this case);
>
> (b) In re Robert Wayne Sims, Case No. 26-00138-JAW; and
>
> (c) In re Key Therapeutics, LLC, Case No. 26-00106-JAW.

11. The Court has already held multiple hearings relating to the Gulf Shores condominium, 365 E Beach Blvd, Unit No. 804, Gulf Shores, Alabama 36542

(the "Condo") and is well aware of the facts and circumstances regarding the property. *See* (Dkt. # 47 at p.3) ("The Court is very familiar with the Condo and Citizens Bank's determination to foreclose its mortgage against the property.").

12. Sims and his then spouse purchased the Condo in 2020 for $600,000.

13. About a year later, Sims transferred the Condo to S-7 Properties, LLC, an Alabama limited liability company owned by Sims.

14. Sims executed an affidavit and certification stating, among other things, that S-7 Properties, LLC is an Alabama LLC and that he is its sole Managing Member with "full and exclusive" authority to act for the company.

15. Sims used property and accounts held by S-7 as his own personally property, and the assets and debts of Sims personally have been comingled with those of S-7, as the Chatper 7 Trustee has testified. S-7 and Sims' personal property have been used interchangeably by Sims for several years preceding the S-7 Properites bankrutpcy petition.

16. S-7 granted Citizens Bank a first-priority lien and security interest in the Condo in connection with a commercial loan transaction in which the "Borrower" is Key Therapeutics, LLC and S-7 Properties is the "Grantor."

17. The Borrower, Key, defaulted on its loan agreement with Citizens Bank, and Citizens Bank has attempted to recover the collateral extended to it under the loan documents.

18. A recent appraisal shows that the Condo has a market value of approximately $770,000.

PD.61794545.2

19. Upon filing of the first two of these related cases (Key and Sims), Stephen Smith was appointed as the Chapter 7 Trustee (the "Trustee") for both.

20. From early on in both of those cases, around January 2026, counsel for Citizens Bank discussed its intention to pursue its collateral, which included foreclosing on the apartment owned by S-7, then a non-debtor third-party.

21. The Trustee opposed this action, and the parties engaged in discussions regarding the impact of Sims individual bankrutpcy case on the property held by S-7.

22. Later, Citizens Bank moved forward with its intent to foreclose by filing a "Motion for Comfort Order" in the Sims case seeking an order from the Court allowing it to proceed with foreclosure of the non-debtor property (the Condo).

23. The Motion for Comfort Order was scheduled for April 14, 2026. (Sims Dkt. # 42).

24. However, a few hours before the hearing in the Sims case, on April 14, the Trustee initiated a separate bankruptcy on behalf of S-7. (Dkt. # 1). At that time, no shcuedles were filed, and an application to employ an attorney for a special purpose was filed in the Sims case in order to authorize the attorney to file a bankruptcy petition for S-7—a few hours before the S-7 bankruptcy petition was in fact filed.

25. The Schedules for S-7 show only one significant asset—the Condo. No debts are listed for the Debtor. Nothing is acutall known by the Trustee about the Debtor, outside of the ownership and mortgage of the Condo held by S-7.

26. The Trustee has stated his intent for filing the case: that he intends to aovid the mortgage of Citizens Bank through a fruadulent avoidance action (which he has filed), to sell the Condo (he has filed an application to employ a realtor), and to distribute the full amount of the proceeds to the Sims case, of which he is also the Chapter 7 Trustee, and disburse the proceeds to creditors in that case.

### III. <u>Legal Standard</u>

**A.     Substantive Consolidation**

27. "Substantive consolidation is part of the Court's general equitable powers under 11 U.S.C.§ 105(a)." *In re El Dorado Gas & Oil, Inc., et al.,* Case No. 23-51715-JAW, Dkt. #1504 at p. 2 (Bankr. S.D. Miss. Aug. 21, 2025) (citing *S.I. Acquisition, Inc. v. Eastway Delivery Serv., Inc. (In re S.I. Acquisition, Inc.*), 817 F.2d 1142, 1145 n.2 (5th Cir. 1987)).

28. The standard applies under substantive consolidation is addressed in detail below.

**B.     Dismissal for Cause**

29. Section 707(a) permits the Court to dismiss a Chapter 7 case "for cause." 11 U.S.C. § 707(a).

30. Although § 707(a) lists examples of "cause," the list is not exhaustive, and bankruptcy courts have authority to dismiss Chapter 7 cases filed in bad faith or constituting an abuse of the bankruptcy process. *See, e.g., In re Zick*, 931 F.2d 1124 (6th Cir. 1991) (bad faith as cause under § 707(a)); *In re Piazza*, 719 F.3d 1253 (11th Cir. 2013) (same).

31. In the Fifth Circuit, "bad faith" principles have long been applied to identify bankruptcy filings used as a litigation tactic to hinder secured creditors rather than to accomplish a valid bankruptcy purpose. *See Little Creek Dev. Co. v. Commonwealth Mortgage Corp.*, 779 F.2d 1068 (5th Cir. 1986) (classic "bad faith filing" indicia in cases filed to delay secured creditor remedies).

32. The Court also possesses inherent authority and statutory authority (including 11 U.S.C. § 105(a)) to prevent misuse of the bankruptcy process and to ensure the Code is not deployed as a mere tactical weapon.

## IV. <u>Argument</u>

**A. The Court should substantively consolidate this case with the cases filed by Sims and Key.**

33. Substantive consolidation is permitted under the "broad equitable power detailed in section 105(a)" of the Bankruptcy Code. *In re Creditors Service Corp.,* 195 B.R. 680, 689 (Bankr. S.D. Ohio 1996); *see also, In re El Dorado Gas & Oil, Inc., et al.,* Case No. 23-51715-JAW, Dkt. #1504 at p. 2 (Bankr. S.D. Miss. Aug. 21, 2025).

34. "Substantive consolidation may be limited to certain classes of claims, specific property, or may be appropriately conditioned." *Id.*

35. "Practically, substantive consolidation is similar to the state law remedy of piercing the corporate veil based on a finding that the entities are alter egos," but it is "not a prerequisite to the utilization of the bankruptcy law remedy of substantive consolidation." *Id.* (citing J. Stephen Gilbert, Note, Substantive Consolidation in Bankruptcy: A Primer, 43 Vand.L.Rev. 207 (1986)).

36.     "Two major factors that courts consider [when coinsidering substantive consolidation] are: (1) wheather creditors dealt with the debtors before bankrutpcy as if they were the same entity and[1] (2) whether the affairs of the debtors after the bankrutpcy are so intertwined that the time and expense necessary to identify and allocate their assets and liabilities would liklely erode the recovery of those assets." *El Dorado Gas & Oil, Inc.,* Case No. 23-51715-JAW, Dkt. 1504 at p.3 (citing *Union Savs. Bank v. Augie/Restivo Banking Co. (In re Augie/Restivo Baking Co.),* 860 F.2d 515, 518 (2d Cir. 1988)).

37.     This Court has previously adopted the apporach of *Union Savs. Bank v. Augie/Restivo Banking Co. (In re Augie/Restivo Baking Co.),* 860 F.2d 515, 518 (2d Cir. 1988), which is generally viewed as a consolidation of prior cases on the issue— namely, *Eastgroup Properties v. Southern Motel Assocs., Ltd.*, 935 F.2d 245, 249 (11th Cir. 1991) and *In re Snider Bros.,* 18 B.R. 230, 234 (Bankr. D. Mass. 1982).

38.     A showing of "entaglement" between the two debtors "would undoubtedly satisfy the *Eastgroup* and *Snider* tests of necessity of consolidation to prevent harm or gain a benefit." 2 COLLIER ON BANKRUPTCY ¶ 105.09[2][a][ii][B] (16th ed. 2025).

39.     Such an approach is analagous to alter ego theories or veil piercing doctrines. As one court has noted:

---

[1] The Court's order says "and," but the opinion relied on actually uses the conjunction "or." *Union Savs. Bank v. Augie/Restivo Baking Co. (In re Augie/Restivo Baking Co.)*, 860 F.2d 515, 518 (2d Cir. 1988). Collier's emphasized the use of "or," rather than "and," as well—emphasizing its importance—"a showing of substantial identity and creditor reliance appears to suffice for substantive consolidation, apparently without the additional showing of a necessity for consolidation or a harm to be prevented or a benefit to be gained . . . ." 2 COLLIER ON BANKRUPTCY ¶ 105.09[2][a][ii][B] (16th ed. 2025).

> Economic integration of the components of a corporate group of their common conduct of a unitary business, notwithstanding formal organization of the components as separate legal entities, has been an important factor in both substantive consolidation proceedings and "piercing the veil" actions. In fact, two courts of appeal have agreed that substantive consolidation is no more than "piercing the veil.

*In re S I Acquisition, Inc.,* 58 B.R. 454, 460 n.3 (Bankr. W.D. Tex. 1986) *rev'd on other grounds,* 817 F.2d 1142 (5th Cir. 1987) (citing *In re Gulfco Inv. Corp.,* 593 F.2d 921, 928–29 (10th Cir. 1979); *In re Continental Vending Mach. Corp.,* 517 F.2d 997, 1000 (2d Cir. 1975)).

40.     As is plain, S-7 is a shell entity created by Robert Sims for the simple purpose of holding the Condo that he owned. The Condo was later used by Sims as a way to bolster is credit-worthiness and to obtain a loan from Citizens Bank and for Key to recive funds. Sims being the sole member, signed all the proper paperwork to convey a security interst in the Condo to Citizens Bank in order to obtain the loan for his genuine business, Key.

41.     None of these facts are controverisal or debated.  These two entities, and Sims indivudal case, are entangled together and should be substantively consolidated.

42.     There is no doubt that the lone creditor here, Citizens Bank, "dealt with the debtors before bankrutpcy as if they were the same entity," which is the select inquity adopted by this Court. As such, the cases should be consolidated.

**B.     Alternatively, the S-7 bankuprtcy case should be dismissed for cause.**

*i.  <u>Bad Faith (I): S-7's Filing is a Mere Litigation Tactic</u>*

43. "A debtor who is not in financial distress cannot establish that its petition serves a valid bankrutpcy purpose supporting good faith." *In re Bedmar, LLC,* 2025 WL 2496260 at *14 (Bankr. D. Del. Aug. 29, 2025)

44. The record reflects that the Condo dispute was already being litigated extensively in Sims' individual bankruptcy case prior to the filing of a bankruptcy petition for S-7, with multiple hearings scheduled, and later held, on April 14, 20, and 28, 2026.

45. The timing and the expressed intent show that the S-7 petition was used to change the procedural playing field, not to accomplish a legitimate Chapter 7 purpose (*e.g.*, orderly liquidation for the benefit of a creditor body).

46. "Where a debtor's filing serves only to create a litigation advantage, . . . and/or to resolve what is essentially a two-party dispute the court may find petition was not filed in good faith." *In re Sacks Weston LLC,* 2024 WL 2152115 at *2 (Bankr. E.D. Pa. Apr. 25, 2024) (internal quotation omitted); *see also, In re WP Realty Acquisition III LLC,* 626 B.R. 154, 163 (Bankr. S.D.N.Y. 2021) (courts may dismiss a case where the debtor "initiated the bankruptcy in bad faith as a litigation tactic").

47. Further, and on point here, "[w]hen the timing of a filing 'is such that there can be no doubt that the primary, if not sole purpose of the filing was a litigation tactic, the petition may be dismissed as not being filed in good faith.'" *In re Vascular Access Centers, L.P.,* 611 B.R. 742, 762 (Bankr. E.D. Pa. 2020) (quoting *Cross Appellees in 09-1432 v. BEPCO, LP (In re 15375 Memorial Corp.),* 589 F.3d 605, 618 (3d Cir. 2009)).

48.     In this context, courts have held that the burden is on the <u>*debtor*</u> "to establish that they filed their petitions in good faith to preserve the [d]ebtor['s] going concern value or to maximize the value of the [d]ebtor['s] estate, rather than as a litigation tactic." *In re JER/Jameson Mezz Borrower II, LLC,* 461 B.R. 293, 298 (Bankr. D. Del. 2011) (collecting cases).

### ii.     *Bad Faith (II): Single Creditor-Debtor Dispute*

49.     Moreover, the structure of this dispute reflects classic "bad faith filing" hallmarks, as acknowledged in the Fifth Circuit: a special-purpose entity holding a single disputed asset used to block secured creditor remedies. *See Little Creek Dev. Co. v. Commonwealth Mortgage Corp.*, 779 F.2d 1068 (5th Cir. 1986).

50.     Citizens Bank's mortgage on the Condo is for $820,000 while the most recent appraisal valued the propert at approximately $770,000.

51.     There are no other meaninful creditors to S-7, and S-7 has no other assets.

52.     Under *Little Creek Dev. Co. v. Commonwealth Mortgage Corp.*, filings that exist principally to invoke the stay and hinder a secured creditor—particularly where the debtor is an entity created/used to hold a single asset at the center of litigation—bear the hallmarks of bad faith. 779 F.2d at 1072–74; *see Chase Manhattan Mortg. Corp. v. Rodriguez (In re Rodriguez),* 248 B.R. 16, 20-21 (Bankr. D. Conn. 1999) ("Congress created Chapter 13 to provide honest, unfortunate debtors with a safe harbor from stormy economic weather. However, Congress never intended

to permit financially stable debtors to sail away from debt they could reasonably repay outside of bankruptcy.").

53.     These hallmarks were listed by a separate bankruptcy court and are generally recgoznied in bankrutpcy courts across the country:

> (1) the debtor has few or no unsecured creditors;
>
> (2) there has been a previous bankruptcy petition by the debtor or a related entity;
>
> (3) the prepetition conduct of the debtor has been improper;
>
> (4) the petition effectively allows the debtor to evade court orders;
>
> (5) there are few debts to non-moving creditors;
>
> (6) the petition was filed on the eve of foreclosure;
>
> (7) the foreclosed property is the sole or major asset of the debtor;
>
> (8) the debtor has no ongoing business or employees;
>
> (9) there is no possibility of reorganization;
>
> (10) the debtor's income is not sufficient to operate;
>
> (11) there was no pressure from non-moving creditors;
>
> (12) reorganization essentially involves the resolution of a two-party dispute;
>
> (13) a corporate debtor was formed and received title to its major assets immediately before the petition; and
>
> (14) the debtor filed solely to create the automatic stay.

*In re SB Properties, Inc.,* 185 B.R. 198, 205 (E.D. Pa. 1995) (collecting cases); *see also In re Mendinghall,* 2026 WL 805337 at *7-8 (Bankr. S.D.N.Y. March 24, 2026) (citing similar factors and finding that "this bankruptcy case was never about restructuring

PD.61794545.2

the Debtor's debts. Rather, the Debtor filed this bankruptcy for the purpose of collaterally attacking the Foreclosure Judgment and sale and staying the Eviction Action").

54. Just like the debtor in *SB Properties*, S-7 Proeperties "[a]side from some rental income, … has no employees to protect, no on-going business to preserve, and no significant creditors other than a mortgage. The record here clearly shows no viable business entity in need of bankruptcy protection." *Id.*

55. It goes without saying at this point in the proceedings, but S-7 meets most of these same factors.

56. Because the record reflects the S-7 filing was intended to halt imminent proceedings concerning the Condo, continuing this case encourages exactly the sort of litigation tactic filing bankruptcy courts are charged to prevent.

## V. Relief Requested

For these reasons, Citizens Bank respectfully requests that the Court enter an order (1) substantively consolidating this bankruptcy case with the Key and Sims cases, or (2) dismissing this Chapter 7 case for cause pursuant to 11 U.S.C. § 707(a) based on bad faith filing and abuse of process. Further, Citizens Bank request that the Court grant such other and further relief as is just and proper.

PD.61794545.2

Dated: July 15, 2026          Respectfully submitted,

**PHELPS DUNBAR LLP**

By: */s/ Sarah Beth Wilson*
Sarah Beth Wilson (MSB 103650)
Andrew R. Norwood (MSB 105087)
PHELPS DUNBAR, LLP
1905 Community Bank Way, Suite 200
Flowood, MS 39232
Telephone: (601) 360-2300
Facsimile: (601) 360-9777
sarah.beth.wilson@phelps.com
drew.norwood@phelps.com

*Attorneys for The Citizens Bank of Philadelphia*

PD.61794545.2

## **Certificate of Service**

I, Sarah Beth Wilson, hereby certify that I have this day served via the Court's ECF Notification System, which sent notice to all parties of record.

Dated: July 15, 2026          By:     */s/ Sarah Beth Wilson*
                                                 Sarah Beth Wilson